UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ADAM ELDER AND MOHAMMED ELDER,

                Plaintiffs,

   -against-

THE CITY OF NEW YORK, New York City Police Department ("NYPD") Deputy Chief Timothy J. Beaudette, Sergeant Joel Mottola, Officer Eric Yudt, Officer Angelo Duarterosario, and NYPD members John/Jane Does 1-5,

                Defendants.

**COMPLAINT**

Jury Trial Demanded

**PRELIMINARY STATEMENT**

1. On December 25, 2023, Plaintiffs Adam Elder and Mohammed Elder were peacefully protesting against Israel's genocide of Palestinians in Gaza at a pro-Palestine protest when police violently arrested them, later falsely and maliciously prosecuting them.

2. This lawsuit seeks justice for and accountability around the City of New York's – and its police force's – retaliatory, disproportionate, and unreasonable response to that protest.

3. On the heels of a settlement promising sweeping changes to police tactics related to policing demonstrations arising from the use of excessive force and other abusive tactics during the Black Lives Matter protests in the summer of 2020 and in 2021, the NYPD has continued to engage in actions related to policing pro-Palestine demonstrations such as the one at which Plaintiffs were arrested, violating Plaintiffs' constitutional and other rights.

**JURISDICTION**

4. This Court has jurisdiction over Plaintiffs' civil rights claims brought under 42 U.S.C. § 1983 pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4).

1

5. Plaintiffs' claim for declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202; Rule 57 of the Federal Rules of Civil Procedure; and the Court's inherent equitable authority.

6. This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a), since Plaintiffs' federal and state law claims arise from a common nucleus of operative facts and are so intertwined as to make the existence of supplemental jurisdiction over the state law claims appropriate.

7. On February 4, 2024, within 90 days after the claims herein arose, Plaintiffs served a Notice of Claim setting forth the name and addresses of the Plaintiffs and of their attorneys, the nature of the claim, the time when, the place where, and the manner in which the claim arose, and the items of damage and injuries claimed to have been sustained, as far as practicable at that time upon the City of New York.

8. This action is commenced within one year and 90 days after the claims herein arose.

9. Hearings pursuant to General Municipal Law 50-H were held for all Plaintiffs.

10. Specifically, Adam Elder and Mohammed Elder's 50-H Hearings were both held on September 30, 2024.

11. At least 30 days have elapsed since the service of the aforesaid Notice of Claim, and adjustment or payment thereof has been neglected or refused.

**VENUE**

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1), as Defendant City of New York resides in this district, and it is where the majority of the acts and omissions complained of occurred.

**JURY DEMAND**

13. Plaintiffs hereby demand a trial by jury of all issues in this action that are so triable pursuant to 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1991, and Fed. R. Civ. P. 38.

**PARTIES**

14. At all times relevant herein, Plaintiff ADAM ELDER has resided in the State and City of New York.

15. At all times relevant herein, Plaintiff MOHAMMED ELDER has resided in the State and City of New York.

16. They are hereinafter the Plaintiffs shall be referred to as "the named Plaintiffs," or "Plaintiffs."

17. Defendant THE CITY OF NEW YORK ("the City") is a municipal entity created and authorized under the laws of the State of New York.

18. The City is authorized by law to maintain a police department and does maintain the New York City Police Department (referred to herein as "the NYPD"). The NYPD acts as the City's agent and the City assumes the risks incidental to the maintenance of a police department and the employment of police officers.

19. Defendant TIMOTHY J. BEAUDETTE was, at all times relevant to this Complaint, a Deputy Chief within the NYPD. He is sued in his official and individual capacity.

20. NYPD Officer ERIC YUDT, NYPD Officer ANGELO DUARTEROSARIO, and NYPD Sergeant JOEL MOTTOLA were, at all times relevant to this Complaint, members of the NYPD. They are sued in their official and individual capacities.

21. Defendants Beaudette, Yudt, Duarterosario, and Mottola are referred to collectively as "the Individual Defendants" or the "Officers."

3

22. At all times relevant herein, the Individual Defendants were employed by the City and acted under color of law in the course and scope of their duties and authority as officers, agents, servants, and employees of the NYPD and the City.

23. At all relevant times, the City and Individual Defendants violated the established rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution and the New York Constitution of which reasonable officials in their respective circumstances would have known.

24. At all times relevant to this Complaint, Defendant Beaudette was a high-level official of the City of New York who had authority to establish policy for the City and the NYPD with respect to Plaintiffs' arrests.

## STATEMENT OF FACTS

*Plaintiff Adam Elder*

25. Adam is a substitute paraprofessional with the Department of Education and works with elementary school students.

26. On December 25, 2023, Adam Elder attended a protest in support of Palestine on Lexington Avenue in Manhattan. While Adam was protesting, he walked up some steps to wave his Palestinian flag.

27. While Adam was peacefully waiving his flag, police officers were pushing and grabbing protesters on the stairs.

28. Defendant Yudt aggressively pushed Adam multiple times.

29. As Adam pleaded with Defendant Yudt to stop pushing him, Defendant Beaudette grabbed Adam with his hands around his neck and pulled him from behind, throwing Adam to the ground.

30. When Defendants Yudt and Beaudette slammed Adam to the ground, Defendants Yudt said to Adam "I moved you now, bitch."

31. Defendant Baudette then placed Adam in a chokehold using a megaphone which hit Adam in the face while restricting Adam's breathing.

32. While Adam was on the ground on his hands and knees officer Yudt punched him several times.

33. Adam heard another officer say to "tase him".

34. Defendants John Does 1 and 2 commanded Adam to lay down and put his hands behind his back.

35. Adam complied.

36. As a result of the above, Adam sustained physical injuries including, but not limited to, bruising to his sclera in his left eye.

37. While Adam was on the ground, he witnessed his dad, Mohammed, being attacked by police.

38. Police then loaded Adam into a police van and took him to One Police Plaza for arrest processing.

39. None of them told Adam why he was detained before he got to One Police Plaza, and police never read him his *Miranda* rights.

40. Police kept Adam in NYPD custody for approximately 5-6 hours.

41. During that time, police did not give him anything to drink or eat.

42. Upon information and belief, beginning during that time, NYPD members, including, but not limited to, Defendants Mottola and Duarterosario, created NYPD paperwork containing false information about Mr. Elder's pre-arrest conduct, which they subsequently forwarded to the Office of the District Attorney of New York County ("DANY").

5

43. Upon information and belief, Defendants Mottola and Duarterosario created such paperwork related to potential charges of Disorderly Conduct, in violation of New York Penal Law ("PL") § 240.20; Resisting Arrest, in violation of PL § 205.30; and Obstruction of Governmental Administration in the Second Degree, in violation of PL § 195.00, based on materially false information.

44. Defendants Duarterosario and Mottola issued Mr. Elder a Desk Appearance Ticket ("DAT") related to purported charges including a PL § 205.30 violation, requiring him to appear before the New York City Criminal Court on January 12, 2025.

45. After around 5-6 hours in custody, police released Adam with that DAT.

46. Mr. Elder hired a criminal defense attorney to represent him in connection with the DAT.

47. On January 12, 2024, the New York County District Attorney's Office declined to prosecute Adam Elder on any charges.

48. As a result of the false arrest and charges brought against Adam, he was suspended from his employment until the resolution of the resulting criminal proceeding, which caused him to lose wages and endure damage to his reputation.

49. After his release from police custody, Mr. Elder sought medical treatment for injuries, including to his eyes, nose, and head.

50. Since the incident on December 25, 2023, Mr. Elder has avoided attending any protests due to fear of being assaulted and arrested by the NYPD. He has developed a strong sense of fear and unease in the presence of police officers. And he does not feel safe at protests due to the police presence and the possibility of a similar incident occurring again.

***Plaintiff Mohammed Elder***

51. Mohammed has been a real estate sales agent in New York City for over ten years. He regularly interacts with people looking to purchase homes or lease apartments. Often times, clients have found Mohammed through google searches.

52. On December 25, 2023, Mohammed Elder attended a protest in support of Palestine at Lexington and 33rd Street in Manhattan. Mohammed attended the protest with several members of his family, including his son Adam.

53. At some point during the protest, Mr. Elder witnessed police officer Yudt slam a female protestor to the ground.

54. Later, Mr. Elder and his wife noticed a commotion going on and began searching for his sons and nieces who were with him that day.

55. While searching for his son, whom he had lost in the crowd, police began to form lines.

56. Mohammed then saw police attacking someone and, upon checking, realized that it was his son Adam.

57. Mr. Elder saw police grab his son, Adam, put him in a chokehold, and attack him.

58. Mohammed pleaded with the NYPD members involved in the assault not to harm his son.

59. Unfortunately, NYPD members then turned to attack him as well.

60. Defendants John Does 2, 3 and 4 assaulted Mohammed, including by punching, kicking and aggressively shoving him.

61. Defendant John Doe 5 placed Mohammed in a headlock, threw him to the ground, and several officers piled on top of him.

62. Defendant Beaudette punched Mohammed in the mouth while he was on the ground and Defendant Yudt pressed his knee into his neck with the full weight of his body resting thereon.

63. Following the assault, police handcuffed Mr. Elder with his face bleeding and told him in substance not to get up.

64. The handcuffs caused bruising, swelling, lacerations and numbness in Mohammed's hands.

65. The officers waited for a photographer to take a picture of him before allowing him to stand.

66. Upon information and belief, NYPD members later provided *The New York Post* with Mohammed and Adam's names and information about their arrests and charges. *See* Farberov, Snejana and Marino, Joe, "Six pro-Palestinian protesters charged over Christmas Day rampage through NYC," *The New York Post,* December 25, 2024  (available online at https://nypost.com/2023/12/26/metro/six-pro-palestinian-protesters-charged-over-christmas-unrest/, last accessed February 24, 2025).

67. The publication of Mohammed and Adam's names and other information in *The New York Post* caused them to be slandered.

68. Police took Mohammed to a police transport vehicle, while he waited with another protestor and his son before being transported to One Police Plaza for arrest processing.

69. Police did not inform Mohammed of the charges prior to being arrested and placed in handcuffs.

70. During arrest processing, NYPD members denied Mohammed's request to make a phone call.

71. Police held Mohammed while processing his arrest for approximately five hours.

72. Upon information and belief, beginning during that time, NYPD members, including, but not limited to, Defendants Mottola and Yudt, created NYPD paperwork containing false information about Mr. Elder's pre-arrest conduct, which they subsequently forwarded to DANY.

8

73. Upon information and belief, Defendants Mottola and Yudt created such paperwork related to potential charges of Disorderly Conduct, in violation of New York Penal Law ("PL") § 240.20; Resisting Arrest, in violation of PL § 205.30; and Obstruction of Governmental Administration in the Second Degree, in violation of PL § 195.00, based on materially false information.

74. Defendants Yudt and Mottola issued Mr. Elder a DAT related to purported charges including a PL § 205.30 violation, requiring him to appear before the New York City Criminal Court on January 12, 2025.

75. After around 5-6 hours in custody, police released Adam with that DAT.

76. Mr. Elder hired a criminal defense attorney to represent him in connection with the DAT.

77. On January 10, 2024, DANY declined to prosecute any charges against Mohammed Elder.

78. Since the incident on December 25, 2023, Mr. Elder has avoided attending any protests due to fear of being assaulted and arrested by the NYPD.

79. As a result of Defendants' actions, Plaintiff Mohammed suffers from anxiety and has a strong sense of fear and unease in the presence of police officers. Mr. Elder does not feel safe at protests due to the police presence and the possibility of a similar incident occurring again. He has sought treatment for wrist pain resulting from overly tight handcuffs.

80. Additionally, he continues to experience neck pain as a result of the incident and has seen a doctor for treatment.

81. Mr. Elder is currently undergoing physical therapy for his neck pain.

## FEDERAL CLAIMS

### FIRST CLAIM FOR RELIEF

**For Violations of Plaintiffs' First Amendment Rights,**

9

**Including Under First Amendment – Retaliation and Time/Place/Manner Theories of Liability**

**Against each individual NYPD member who participated in violating each Plaintiff's rights and/or failed to intervene and/or supervise subordinates related to their violations of each Plaintiff's rights**

*Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Plaintiffs' Rights Under the First and Fourteenth Amendments to the United States Constitution*

82. Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

83. At all times herein, all Plaintiffs were engaged in their rights to free speech and assembly as protected by the First Amendment of the Constitution.

84. Defendants engaged in the acts and omissions complained of herein in retaliation for Plaintiff's protected speech and/or conduct.

85. Defendants engaged in the acts and omissions complained of herein in order to prevent Plaintiffs from continuing to engage in such protected speech and/or conduct.

86. Defendants engaged in the acts and omissions complained of herein in order to prevent and/or discourage Plaintiffs from engaging in similar protected conduct in the future.

87. Additionally, as discussed elsewhere herein, Defendant City designed and/or implemented policies and practices pursuant to which those Defendants who implemented them subjected Plaintiffs to violations of their First Amendment rights.

88. Upon information and belief, Defendants engaged in the acts and omissions complained of herein with respect to Plaintiffs' First Amendment-based claims—including the related municipal liability claims involving the adoption of policies, practices, and/or customs and/or related failures to train, supervise, and/or discipline—with malice.

89. Defendants imposed restrictions on Plaintiffs' protected speech and/or conduct that violated Plaintiffs' First Amendment rights, including, but not limited to, in subjecting Plaintiffs to

excessive force, false arrest, excessive detention, malicious and false prosecution, and in otherwise violating Plaintiffs' rights and engaging in the acts and omissions complained of herein.

90.  In addition to being retaliatory, the restrictions Plaintiffs complain of herein that Defendants imposed on Plaintiffs' First Amendment rights:

   a. Were viewpoint discriminatory and/or otherwise not content-neutral, and were not necessary, and precisely tailored, to serve compelling governmental interests, and/or were not the least restrictive means readily available to serve those interests; or, alternately,

   b. Were content-neutral, but lacked narrow tailoring to serve a significant governmental interest, in that they burdened substantially more protected speech and/or conduct than necessary to serve those interests, and/or failed to provide ample alternatives for Plaintiffs' protected activity; and/or

   c. Afforded Defendants unbridled or otherwise inappropriately limited discretion to limit or deny Plaintiffs' ability to engage in protected conduct (also raising constitutionally significant Due Process-based vagueness and/or overbreadth concerns); and/or

   d. Amounted to the imposition of strict liability on Plaintiffs for engaging in protected First Amendment activity.

91.  As a result of the foregoing, Plaintiffs were deprived of their liberty and First Amendment rights, suffered specific and serious bodily injury, emotional distress, costs, and expenses, and were otherwise damaged and injured.

92.  The unlawful conduct of the City, Defendant Beaudette, and the Individual Defendants was willful, malicious, oppressive, and/or reckless, and was of such nature that punitive damages should be imposed against them.

## SECOND CLAIM FOR RELIEF

**Against each individual NYPD member who participated in violating each Plaintiff's rights and/or failed to intervene and/or supervise subordinates related to their violations of each Plaintiff's rights**

***Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Plaintiffs' Rights Under the Fourth and Fourteenth Amendments to the United States Constitution***

93. Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

94. Defendants unlawfully assaulted the Plaintiffs without justification to do so.

95. Defendants' actions resulted in the use of excessive force to effectuate an otherwise unlawful arrest.

96. Defendants' use of force against Plaintiff was unjustified and objectively unreasonable, taking into consideration the facts and circumstances that confronted Defendants.

97. As a result of the foregoing, Plaintiffs were deprived of their liberty and First Amendment rights, suffered specific and serious bodily injury, emotional distress, costs, and expenses, and were otherwise damaged and injured.

98. The unlawful conduct of the City, Defendant Beaudette, and the Individual Defendants was willful, malicious, oppressive, and/or reckless, and was of such nature that punitive damages should be imposed against them.

### THIRD CLAIM FOR RELIEF

**Unlawful Seizure / False Arrest**

**Against each individual NYPD member who participated in violating each Plaintiff's rights and/or failed to intervene and/or supervisde subordinates related to their violations of each Plaintiff's rights**

*Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Plaintiffs' Rights Under the Fourth and Fourteenth Amendments to the United States Constitution*

99. Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

100. Defendants seized each Plaintiff without a judicial warrant authorizing them to do so.

101. Defendants seized Plaintiffs without privilege or lawful justification.

102. Defendants' seizures of Plaintiffs were unreasonable.

103. Plaintiffs did not consent to and were conscious of their confinements by Defendants.

104. Defendants did not have probable cause to seize, detain, or arrest Plaintiffs.

105. As a result of the Defendants' misconduct, Plaintiffs were deprived of liberty and property, suffered specific and serious bodily injury, emotional distress, costs, and expenses, and were otherwise damaged and injured.

106. The unlawful conduct of the City, the City Officials, and the Individual Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## FOURTH CLAIM FOR RELIEF

**Against each individual NYPD member who participated in violating each Plaintiff's rights and/or failed to intervene and/or supervise subordinates related to their violations of each Plaintiff's rights**

*Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Plaintiffs' Rights Under the Fourth, Fiffth, Sixth, and/or Fourteenth Amendments to the United States Constitution*

107. Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

108. Defendants fabricated evidence of a material nature, likely to influence a jury's decision, and intentionally forwarded that evidence to prosecutors, as a result of which each Plaintiff suffered deprivations of liberty and/or property.

109. As a result of the Defendants' misconduct, Plaintiffs were deprived of liberty and property, suffered specific and serious bodily injury, emotional distress, costs, and expenses, and were otherwise damaged and injured.

110. The unlawful conduct of the City, Defendant Beaudette, and the Individual Defendants was willful, malicious, oppressive, and/or reckless, and was of such nature that punitive damages should be imposed against them.

## SIXTH CLAIM FOR RELIEF

13

## Municipal Liability

## Against Defendant City of New York

***Pursuant to 42 U.S.C. 1983 and Monell v. Department of Social Services, 436 U.S. 658 (1978) for Defendants' Violations of Plaintiff's Rights Under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution***

111. Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

112. On May 25, 2020, Minneapolis police murdered George Floyd. Almost immediately, protests against police violence and in support of police accountability and the Black Lives Matter movement spread across the United States and the world, including here in New York City where thousands exercised their constitutional rights to protest.

113. In the following days and weeks, at the height of the COVID-19 public health pandemic, NYPD members engaged in activities that violated the constitutional and other legal rights of individuals who were protesting police misconduct, as well as bystanders and observers such as Mr. Valentine.

114. The City's and NYPD's responses to the summer 2020 Black Lives Matter protests (the "Summer 2020 Protests") were the subject of public scrutiny as they unfolded and have since given rise to substantial litigation in federal and state courts as well as investigations by the New York State Attorney General, the New York City Council, and other governmental agencies.

115. Plaintiffs incorporate by reference the facts contained in the reports that have been issued concerning Defendants' responses to the summer 2020 protests, including, *inter alia,* the reports issued by the New York State Office of the Attorney General, the New York City Office of the Corporation Counsel, and the New York City Department of Investigation.[1]

---

[1] Letitia James, Attorney General, State of New York, *Preliminary Report on the New York City Police Department's Response to Demonstrations Following the Death of George Floyd,* available at https://ag.ny.gov/sites/default/files/2020-nypd-report.pdf; Margaret Garnett, Commissioner, New York City Department of Investigation, *Investigation into NYPD Response to the George Floyd Protests*, ("DOI Report"), Dec.

116. Plaintiffs incorporate by reference the factual allegations set forth in other federal civil rights complaints in cases filed in the United States District Court for the Southern District of New York arising from Defendants' responses to the Summer 2020 Protests that support Plaintiffs' *Monell* claims against Defendants in this case, including:

   a. *Sow et al v. City of New York et al,* 20-cv-00533(CM)(GWG);

   b. *People of the State of New York v. CityoOf New York et al*, 21-cv-322 (CM)(GWG);

   c. *Rolon et al. v. City of New York, et al.,* 21-cv-02548(CM);

   d. *Payne et al v. De Blasio et al*, 20-cv-8924 (CM)(GWG);

   e. *Sierra et al v. City of New York et al*, 20-cv-10291 (CM)(GWG);

   f. *Wood v. De Blasio et al*, 20-cv-10541 (CM)(GWG);

   g. *Yates v. City of New York, et al.,* 21-cv-01904 (CM)(GWG);

   h. *Campbell v. City of New York,* 21-cv-04056 (AJN); and

   i. *Gray, et al., v. City of New York, et al.,* 21-cv-06610 (CM)(GWG).

117. The facts as pleaded above describe the policies, practices, and customs Defendants subjected Plaintiffs to, including, but not limited to: uses of excessive force, false arrests, unlawful detentions, unreasonable restrictions on protesters' First Amendment-protected conduct, often without fair warning; and employing crowd control tactics such as pushing, corralling, encircling, or otherwise trapping protesters, without fair warning.

118. *The People of the State of New York v. Cityo Of New York et al*, 21-cv-322 (CM)(GWG); *Rolon et al. v. City of New York, et al.,* 21-cv-02548(CM); *Payne et al v. De Blasio et al*, 20-cv-8924 (CM)(GWG) and *Gray, et al., v. City of New York, et al.,* 21-cv-06610 (CM)(GWG)

---

2020, available at https://www1.nyc.gov/assets/doi/reports/pdf/2020/DOIRpt.NYPD%20Reponse.%20GeorgeFloyd%20Protests.12.18.2020.pdf; New York City Law Department, *Corporation Counsel Report Pursuant to Executive Order 58 (June 20, 2020) Directing an Analysis of Factors Impacting the George Floyd Protests in New York City* (Dec. 2020) ("OCC Report"), available at https://www1.nyc.gov/assets/law/downloads/pdf/ProtestReport-np.pdf.

resulted in a settlement promising substantial reforms to the NYPD's policing of first amendment activities including training, practices, and supervision.[2]

119. All of the wrongful acts or omissions complained of herein were carried out by the individual named and unnamed police officer defendants pursuant to: (a) formal policies, rules, and procedures of Defendant City; (b) actions and decisions by Defendant City's policymaking agents including but not limited to Defendant Beaudette; (c) customs, practices, and usage of the NYPD that are so widespread and pervasive as to constitute de facto policies accepted, encouraged, condoned, ratified, sanctioned, and/or enforced by Defendant City and other policymaking officials; (d) Defendant City's deliberate indifference to Plaintiffs' rights secured by the First, Fourth, Fifth, Sixth, and/or Fourteenth Amendments of the United States Constitution, as evidenced by the City's failures, and the failures of the City's policymaking agents, to train, supervise, and discipline NYPD members, despite full knowledge of their wrongful acts, as described herein; and (e) Defendant City's ratification of the actions of the Individual Defendants and other NYPD members involved in violating Plaintiffs' rights.

120. As a result of the Defendants' misconduct, Plaintiffs were deprived of liberty and property, suffered specific and serious bodily injury, emotional distress, costs, and expenses, and were otherwise damaged and injured.

## CLAIM UNDER NEW YORK CITY LAW

## SEVENTH CLAIM FOR RELIEF

*By all Plaintiffs against all Defendants*

*Pursuant to N.Y.C. Administrative Code §§8-801, et seq.*

121. Plaintiffs incorporate by reference all the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

---

[2] https://www.nyclu.org/uploads/2023/09/1099-2_settlement_agreement.pdf

122. The New York City Administrative Code §8-803 provides as follows in relevant part:

"A covered individual who, under color of any law, ordinance, rule, regulation, custom or usage, subjects or causes to be subjected, including through failure to intervene, any other natural person to the deprivation of any right that is created, granted or protected by section 8-802 is liable to the person aggrieved for legal or equitable relief or any other appropriate relief."

"The employer of a covered individual who, under color of any law, ordinance, rule, regulation, custom or usage, subjects or causes to be subjected, including through failure to intervene, any other natural person to the deprivation of any right that is created, granted or protected by section 8-802 is liable, based upon the conduct of such covered individual, to the person aggrieved for legal or equitable relief or any other appropriate relief."

"A person aggrieved may make a claim pursuant to subdivision a of this section in a civil action in any court of competent jurisdiction by filing a complaint setting forth facts pertaining to the deprivation of any right created, granted or protected by section 8-802 and requesting such relief as such person aggrieved considers necessary to insure the full enjoyment of such right."

123. Given the fact that a "covered individual" under §8-801 means "[any] employee of the police department," the Individual Defendants are all considered covered individuals. §8-801.

124. Each Plaintiff is a "person aggrieved" because he was (at minimum) "allegedly subjected to, or allegedly caused to be subjected to, the deprivation of a right created, granted, or protected by §8-802 by a covered individual even if the only injury allegedly suffered by such natural person is the deprivation of such right." *Id.*

125. Defendant City is liable as an employer, as set out above.

126. Defendants' uses of force against Plaintiffs were unjustified, unlawful, and objectively unreasonable, considering the facts and circumstances before the Defendants.

127. As a result of Defendants' acts and omissions, Defendants deprived Plaintiffs of Plaintiff's federal, state, and/or other legal rights; caused Plaintiffs bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiffs to expend costs and expenses; and/or otherwise damaged and injured Plaintiffs.

128. Further, it is not a defense to liability under §§8-801 *et seq.* that a covered individual has qualified immunity or any other substantially equivalent immunity.

129. Thus, the Court should award both compensatory and punitive damages against all Defendants (including the City), an order restraining future conduct, and all reasonable fees and court expenses pursuant to §8-805 of the Administrative Code.

## NEW YORK STATE LAW CLAIMS

## EIGHTH CLAIM FOR RELIEF

*By Plaintiffs Against All Defendants*

*For Violations of New York State law and/or the New York State Constitution*

130. Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

*Respondeat Superior* **Liability**

131. The conduct of the police officials alleged herein occurred while they were on duty and/or in and during the course and scope of their duties and functions as police officials, and/or while they were acting as agents and employees of Defendant City, clothed with and/or invoking state power and/or authority, and, as a result, Defendant City is liable to the Plaintiff pursuant to the state common law doctrine of *respondeat superior*.

**Assault**

132. Defendants committed assault within the meaning of New York common law against each Plaintiff by intentionally placing each Plaintiff in fear of imminent harmful or offensive contact.

**Battery**

133. Defendants committed battery within the meaning of New York common law against each Plaintiff by intentionally physically contacting each Plaintiff without Plaintiff's consent.

**Malicious Prosecution**

134. Defendants committed malicious prosecution within the meaning of New York common law against each Plaintiff by initiating criminal charges against each Plaintiff without probable cause, which terminated on grounds consistent with each Plaintiffs' innocence.

**False Imprisonment and Unreasonable Detention**

135. By the actions described above, the police officials described above did falsely arrest and/or imprison each Plaintiff within the meaning of New York common law without reasonable or probable cause, illegally and without a written warrant, and without any right or authority to do so. Each Plaintiff was conscious of the confinement and it was without tat Plaintiff's consent.

**Negligent Training and Supervision**

136. Defendant City negligently trained supervised, and trained Defendant Beaudette and the Individual Defendants.

**Violations of the New York State Constitution**

137. Defendants, acting under color of law, violated each Plaintiff's rights pursuant to Article I, §§ 6, 8, 9, 11, and/or 12 of the New York State Constitution.

138. A damages remedy here is necessary to effectuate the purposes of Article I, §§ 6, 8, 9, 11, and/or 12 of the New York State Constitution, and appropriate to ensure full realizations of each Plaintiffs' rights under those sections.

139. As a result of Defendants' acts and omissions, Defendants deprived Plaintiffs of Plaintiffs' federal, state, and/or other legal rights; caused Plaintiffs bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiffs to expend costs and expenses; and/or otherwise damaged and injured Plaintiffs.

140. Defendants' unlawful conduct was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them

**PRAYER FOR RELIEF**
**DEMAND FOR JUDGMENT**

WHEREFORE, Plaintiffs demand judgment against the Individual Defendants and the City of New York as follows:

i. Actual and punitive damages against the Individual Defendants in an amount to be determined at trial;

ii. Actual damages in an amount to be determined at trial against the City of New York, and punitive damages pursuant to N.Y.C. Admin. Code § 8-805(1)(ii);

iii. An appropriate restraining order pursuant to N.Y.C. Admin. Code § 8-805(3);

iv. Statutory attorney's fees, disbursements, and costs of the action pursuant to, *inter alia,* 42 U.S.C. § 1988, N.Y.C. Admin. L. § 8-805(2), and New York common law; and

v. Such other relief as the Court deems just and proper.

Dated: New York, NY
March 7, 2025

Respectfully submitted,

THE ABOUSHI LAW FIRM, PLLC

/S/ Tahanie A. Aboushi
BY: Tahanie A. Aboushi
1441 Broadway 5th Floor
New York, New York 10018
Telephone: (212) 391-8500
Tahanie@Aboushi.com
*Attorneys for Plaintiffs*

/s/ Gideon Orion Oliver

Gideon Orion Oliver
277 Broadway, Suite 1501
New York, NY 10007
(718) 783-3682 x 5
(646) 349-2914 (fax)
Gideon@GideonLaw.com
*Co-counsel for Plaintiffs*